**Ann G. BURNELL, Plaintiff,**

v.

**BUTLER MOVING & STORAGE, Mollen Transfer & Storage, William Pulaski, and Roadway Express, Inc., Defendants.**

No. 92–CV–919.

United States District Court, N.D. New York.

July 19, 1993.

**66**

Ann G. Burnell, plaintiff, pro se.

McNamee, Lochner Law Firm, Albany, for defendant Roadway Exp. (Glen Kimball Williams, of counsel).

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

This action was originally filed in state court and then removed to this court by defendant Roadway Express, Inc. (Roadway). Plaintiff Ann G. Burnell alleges that in August, 1991 she contracted with defendant William Pulaski, as president of defendant Butler Moving & Storage and Mollen Transfer & Storage (Butler and Mollen), for the transportation of her goods from Endicott, New York to San Diego, California. The complaint further alleges that the goods were accepted and received by Butler; and that on or about August 29, 1991 the goods were delivered in a damaged condition by Roadway.

On May 28, 1993 the court heard oral argument on plaintiff's motion for summary judgment and defendant Roadway's motion for partial summary judgment limiting its liability to $100.00. After considering the arguments of the parties, the court rendered an oral decision denying both plaintiff's and Roadway's motion based upon the existence of genuine issues of material fact. On June 15, 1993 an order was entered denying the two motions. Subsequently, on June 18, 1993 defendant Roadway applied for an order to show cause for reargument of the court's May 28, 1993 oral decision. In an order dated June 22, 1993, the court granted this application and set July 9, 1993 as the return date for Roadway's motion for reargument. Then, on July 6, 1993 plaintiff filed her opposition to Roadway's motion. This Memorandum–Decision & Order constitutes the court's ruling on Roadway's motion for reconsideration.

**Facts:**

Sometime in August, 1991 plaintiff contracted with defendant William Pulaski, as president of defendant Butler/Mollen, for the transportation of certain household goods from Endicott, New York to San Diego, California. On or about August 21, 1991 Mollen, as forwarder, delivered 13 closed and sealed cartons to Roadway, as carrier, for shipment to plaintiff at her daughter's residence in San Diego, California. Neither party disputes the fact that Roadway was not a party to any contract or arrangement between plaintiff and either Mollen or Butler.

Upon receipt of the cartons, Roadway issued its bill of lading which identified Mollen as the shipper and plaintiff as the consignee. A copy of the bill of lading is attached as Exhibit C to the affidavit of Kathy Jones, Claims Analyst–Legal for Roadway, submitted in support of the motion for partial summary judgment. The bill of lading described the goods as "Household Goods at $.10/lb". In the column labelled "Class", C100 was listed, and the weight of the goods was listed as 1000 pounds. The bill of lading further provided that the goods were "[r]eceived, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading ..." Finally, the bill of lading provided:

NOTE—When the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.

The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding:

$_____ per _____

This item on the bill of lading was left blank.

In further support of its motion, Roadway submitted a copy of the relevant tariffs on file with the Interstate Commerce Commission at the time of the instant transaction.

Copies are attached to the Jones affidavit as Exhibits D and E. Tariff NMF100–R (Exhibit D) contains the various freight rates available to shippers of household goods, and corresponding "released values", or levels of liability per pound of goods shipped, for shippers to choose from. Each released rate corresponds to an appropriate "LTL Class", which refers to "less-than-truckload" class. Under the category of Household Goods, the lowest "released value", and the value which corresponds to LTL Class 100, states "Released value not exceeding 10 cents per pound." In relevant part, Tariff 100–S (Exhibit E) states at Item 8 that:

"When tariff provisions provide for alternative actual value or released value declarations by the consignor at time of shipment and carrier receives the shipment without such declaration, the shipment will be rated at the lowest released value or highest actual value, except when tariff items specifically provide provisions for rating."

This clause is commonly referred to as the "inadvertence clause".

**Discussion:**

 In its motion for partial summary judgment, Roadway argued that its liability in this case should be limited to $100.00. Roadway maintained that because Mollen failed to specify a released rate on the bill of lading, the shipment of goods should be deemed released at the lowest possible rate. However, in order to limit its liability, a carrier such as Roadway must do the following:

(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission;

(2) obtain the shipper's agreement as to her choice of liability;

(3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and

(4) issue a receipt or bill of lading prior to shipping the goods.

*See Hughes v. United Van Lines, Inc.,* 829 F.2d 1407 (7th Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *see also Hughes Aircraft v. North American Van Lines,* 970 F.2d 609 (9th Cir. 1992); *Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079 (5th Cir.1992) (*en banc* ); *Carmana Designs, Ltd. v. North American Van Lines, Inc.,* 943 F.2d 316 (3d Cir.1991); and *Anton v. Greyhound Van Lines, Inc.,* 591 F.2d 103 (1st Cir.1978).

There was no genuine issue concerning the first and fourth requirements; and with respect to Mollen, there was no dispute as to the second and third elements. However, at oral argument plaintiff asserted that she was not given the opportunity to choose between different levels of liability because she did not contract with Roadway, and therefore that she should not be held to the lowest possible released rate. The court recognized that in *Mechanical Technology, Inc. v. Ryder Truck Lines,* 776 F.2d 1085 (2d Cir.1985), the Second Circuit held that the failure of the shipper to designate a particular released rate resulted in a released rate according to the inadvertence clause. There, the court stated: "Having had the opportunity on its own form to secure greater protection, [Mechanical Technology] 'cannot complain about the consequences of leaving the applicable spaces blank.'" *Id., citing, W.C. Smith, Inc. v. Yellow Freight Systems, Inc.,* 596 F.Supp. 515, 517 (E.D.Pa.1983). Despite the claims of the shipper that it had no knowledge of the tariff rates, the court held that under the facts of the case the shipper was charged with knowledge of the tariff rates, and therefore bound by them.

However, the plaintiff here, unlike the plaintiff in *Mechanical Technology,* may not have had the opportunity to secure greater protection. The plaintiff in *Mechanical Technology* was the shipper who contracted with the defendant. As plaintiff points out in her opposition papers, she was not a party to the contractual agreement between Mollen and Roadway. In fact, she asserts that she was not even aware that Roadway was being hired to transport the goods. Therefore, the court found that there existed a question of fact as to the second and third elements stated above.

Roadway argued that as the consignee, plaintiff is legally bound by the provisions of the tariff; and that plaintiff designated the

other defendants as her agents and is therefore bound by their decisions. On this point, the court ruled that if Mollen was plaintiff's agent, under traditional principles of agency plaintiff might be bound by their decisions; but that would necessarily depend upon the arrangement between plaintiff and the other defendants. The court stated that "[w]hile this theory may have some validity, Roadway has not met its burden under Rule 56(c) of demonstrating that there are no genuine issues of material fact." (Transcript of proceedings on May 28, 1993 at p. 19).

Now, on reconsideration, Roadway argues that the court has overlooked well-established law which dictates that plaintiff's rights as consignee are no greater than those of Mollen or Butler. In her response to the motion for reconsideration, plaintiff argues, among other things, that she was not the consignee. However, plaintiff is clearly listed as the consignee on the bill of lading, and in opposition to the motion for summary judgment plaintiff did not present any evidence to the contrary. Nevertheless, the issue still remains whether plaintiff is bound by Mollen's failure to designate a higher released rate on the bill of lading.

■■■ The decision to grant or deny a motion for reconsideration is clearly within the discretion of the court. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983). However, in asking for reconsideration, Roadway bears a heavy burden. It must specifically identify the matters or controlling decisions which the court has overlooked and which would have materially altered the prior ruling. *See Inmates of New York with Human Immunodeficiency Virus v. Cuomo,* 1992 WL 373516, slip op. at 2 (N.D.N.Y.1992) (McAvoy, J.). In its motion, Roadway argues that the court overlooked controlling precedent which dictates that partial summary judgment be granted limiting Roadway's liability to $100.00.

Specifically, Roadway argues that the facts in the present case are similar to the facts in *Great Northern Railway Company v. O'Conner,* 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703 (1914), where the Supreme Court held that the plaintiff customer was bound by the terms of the contract between the forwarder and the carrier. *Great Northern* was not cited by Roadway in the memorandum of law submitted in support of its motion for summary judgment. Nonetheless, it is controlling precedent which must now be considered on the instant motion. Upon reconsideration, the court concludes that the Supreme Court's decision in *Great Northern* dictates that Roadway's motion for partial summary judgment be granted.

In *Great Northern* the plaintiff shipped household goods via Boyd Transfer Co., a freight forwarder. Boyd Transfer then delivered the goods to Great Northern, as carrier of the goods. The goods were lost en route to their destination, and the plaintiff sued Great Northern for their full value. Great Northern argued that in view of the provisions of the tariff filed with the Interstate Commerce Commission, and the fact that the goods had been shipped at the $1.00 rate, its liability was limited to $10.00 per hundredweight. Unbeknownst to the plaintiff, Boyd Transfer had filled out the bill of lading listing the released rate as "$10.00 per cwt.", and naming Boyd Transfer as the shipper. The plaintiff argued that Boyd failed to transport her goods as she had expected, and that she had not given Boyd the authority to agree to a lower released rate.

However, the Supreme Court held that the forwarder's customer is bound by the terms of the contract between the forwarder and the carrier. It explained that "nothing to the contrary appearing, the carrier had the right to assume that the transfer company could agree upon the terms of the shipment, some of which were embodied in the tariff." *Id.* at 514, 34 S.Ct. at 383. Nevertheless, the plaintiff was not without a remedy. "If there was any undervaluation, wrongful classification, or violation of her instructions, resulting in damage, the plaintiff has a remedy against the [forwarder]." *Id.* at 514–515, 34 S.Ct. at 383.

The facts of *Great Northern* are indistinguishable from the facts in the instant case. Roadway had the right to assume that Mollen had the authority to agree to the terms of the shipment, and plaintiff has presented no evidence to the contrary. Consequently, upon reconsideration the court is constrained

by the Supreme Court's ruling in *Great Northern* to grant Roadway's motion for partial summary judgment. *See also Gulf & Western Industries, Inc. v. Old Dominion Freight Line, Inc.,* 633 F.Supp. 688 (M.D.N.C.1986) (plaintiff bound by two year and a day limitations period found in contract between forwarder and carrier). Therefore, for these reasons, it is hereby

**ORDERED,** that defendant Roadway's motion for reconsideration is granted, and it is further

**ORDERED,** that upon reconsideration, defendant Roadway's motion for partial summary judgment, previously denied, is granted, and it is further

**ORDERED,** that defendant Roadway's liability to plaintiff, if any, is limited to $100.00.